# McBride v. State.

(Division B. June 10, 1940).

[196 So. 633. No. 34121.]

J. M. Carr, of Newton, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for appellee.

Ethridge, P. J., delivered the opinion of the court.

The appellant was indicted in the Circuit Court of Newton County for the murder of one John Nelson, and was convicted of manslaughter and sentenced to serve a term of eight years in the state penitentiary; from which conviction, he appeals.

It appears from the evidence that the appellant, Nelson and others were fighting fire southwest of Lawrence in Newton County, Mississippi; and that he left and went to the home of Nelson nearby, his sister and Nelson's wife being present. Later, Nelson returned home, accompanied by P. H. Lyle, a white man, and they found McBride there playing a guitar. Nelson accosted him about leaving—running away from the fire fighting—words ensued, which was followed by a fight, in which Nelson was struck and his skull fractured, from which wounds he died.

One of the principal witnesses for the State, P. H. Lyle, who was present at the time the fight took place, testified that the appellant struck the deceased at a time when he was unarmed and doing nothing to provoke the assault. The testimony of this witness, corroborated to some extent, was sufficient to secure the conviction. The defendant offered the wife of the deceased as a witness to prove the facts of the difficulty, and also to impeach Lyle's testimony. A statement is said to have been made by Lyle to several persons, who came to the home of the deceased after the difficulty, that it was so dark that he could not see just how it happened. Lyle denied making such statement, and his testimony was impeached by other witnesses. The State objected to the testimony of the deceased's wife on the ground that she was disqualified as a witness. Her testimony was heard by the court in the absence of the jury, and the objection of the State was sustained. The objection of the prosecution to the testimony of the wife was that she was being offered to testify against her husband. After prov-

ing that she was the widow of the deceased, in the absence of the jury, the court heard the following testimony:

"Q. Do you remember the occasion when a difficulty between Johnnie Nelson and Theodore McBride took place on a night in December? A. Yes, sir.

"Q. When did you first see Theodore McBride on that night? A. I seed them down there fighting fire that evening.

"Q. I am talking about that night at the house? A. He come to the house after some water.

"Q. Did he stay there? A. Yes, sir.

"Q. What did he do while he was there? A. Picked the guitar.

"Q. Who all was there? A. Me and his sister.

"Q. Now did you see Mr. Lyle when he came there? A. No sir.

"Q. Did you see Johnnie when he came up? A. No, sir, I didn't see Johnnie until he was in the house.

"Q. What if anything happened in the house between Johnnie and Theodore? A. Nothing.

"Q. Was any cursing going on in there? A. No, sir.

"Q. Now what started the difficulty if anything? A. Well Theodore was there in the kitchen and Johnnie asked him how come he didn't stay and help put out fire and he told him that he came after some water.

"Q. All right, what else happened? A. And he told Theodore he slipped off and Theodore told him he didn't slip off he just come after a drink of water and Johnnie turned and went out and Theodore went out too. I was in the kitchen cooking supper, me and his sister.

"Q. What did you see outside of the house? A. I didn't see anything only when I got out there Theodore struck him.

"Q. Did you see a knife there? A. Yes, sir.

"Q. Who had the knife? A. The knife was there where Johnnie was.

"Q. What knife was it, this knife here? A. Yes, sir.

"Q. Did you ever see Johnnie Nelson with that knife

before? A. Yes, sir, I know it was his knife because I was the one that got the knife.

"Q. You bought it for Johnnie? A. No, sir, I picked it up.

"Q. Did you see Johnnie with that before? A. Yes, sir.

"Q. You state that this is his knife? A. Yes, sir, that is his knife.

"Q. Did you see a stick of wood there by him? A. Yes, sir, a little split stick of wood there by him.

"Q. Were you there in the house that night when Amos Lyle, Mr. Frank Cox, Mary McBride, J. B. McBride were there? A. Yes, sir.

"Q. State whether or not you heard Mr. P. H. Lyle make a statement there in your presence and in the presence of those others I have just named that it was too dark, he could not see what happened? A. Yes, sir, he certainly said it.

"Q. I will ask you whether or not Mary McBride Cox made any statement in your presence there—You were there all the time? A. Yes, sir.

"Q. Whether she made any statement there in your presence to Mr. Wesley Thrash or some other person that she held Theodore McBride—that she held Johnnie Nelson while Theodore hit him? A. No, sir. (An objection was made by a Mr. Munn, but it was overruled by the court.)

"Q. Could you have heard it if she had made a statement? A. Yes, sir.

"Q. Did you hear any conversation with them? A. No, sir, she didn't."

Whereupon, the court ruled that under Section 1528 of the Code of 1930, the proffered testimony of the wife should be excluded. Section 1528 provides that a husband or wife may be introduced by each other as witnesses in all cases, civil or criminal, and should be competent witnesses in their own behalf, against each other, in all controversies between them; but in all other instances where either of them is a party litigant, the other should

not be required to answer interrogatories or make disclosure of any matters.

It will be noted from the statement made by the wife that the evidence so excluded might have been very influential on the question of guilt or innocence, and also on the question of the impeachment of the witness Lyle. In a prosecution for murder or manslaughter, the deceased is in no sense a party to the suit, and the wife was competent to testify as to what occurred at the scene of the killing, and as to statements made by others, or statements made in the presence of others, bearing on the material issues in coutroversy. The testimony attempted to be offered was not a priviledged communication between husband and wife, and the husband was in no sense a party to the suit, as heretofore stated. A conversation between husband and wife in the absence of a third party is a priveleged communication, but that question is not involved in this case, as no attempt was made to prove such communications. The wife was a competent witness as to matters offered to be proved by her, and the court erred in excluding her testimony. For which error, the case must be reversed and remanded for a new trial.

Reversed and remanded.